AO 106 (Rev. 04/10) Application for a Search Warrant (requesting AUSA Shapiro

# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 19-14-M
Thirteen Subject Cellular telephones )
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
Cellular telephones identified in Attachment A

located in the **Eastern** District of **Pennsylvania**, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachments B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

*Code Section*                    *Offense Description*
21 U.S.C. 841 and 846        Conspiracy, Possession of Cocaine with Intent to Distribute

The application is based on these facts:
See Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Kevin M. Voit, United States Postal Inspector
*Printed name and title*

Sworn to before me and signed in my presence.

Date: January 4, 2019

*Judge's signature*

City and state: Philadelphia, Pennsylvania      HON. THOMAS J. RUETER, U.S. Magistrate Judge
*Printed name and title*

ATTACHMENT "A"

DESCRIPTION OF THE PREMISES TO BE SEARCHED

Item 1:     A Black LG-B470 IMEI:354104088864170

Item 2:     Black Samsung Model SMB311V SKU: SMB311VZPP

Item 3:     Black AT&T Model:Z223 IMEI:868899026246302

Item 4:     Black LG-B470 IMEI:014564008607912

Item 5:     Blackberry Torch SKU#68001

Item 6:     Black Samsung Model:SM327VL(GP) IMEI:355744097028389

Item 7:     Black Samsung Model:SMS337TL(GP) IMEI:356448083065848

Item 8:     Black ZTE Model:Z932L IMEI:990005151763589

Item 9:     Black Motorola Model:XT1766 FCCID:IHDT56WC3

Item 10:    Black ZTE Model:Z932L IMEI:990005151711539

Item 11:    Black LG-B470 IMEI:359926086367649

Item 12:    Black Samsung Model SM-J337P FCCID:A3LSMJ337P

Item 13:    Red iPhone T-Mobile Sim Card 8901260152719258092

All items are currently in the custody of the United States United States Postal Inspection Service, Philadelphia Division, within the Eastern District of Pennsylvania.

## ATTACHMENT "B"

### PROPERTY TO BE SEIZED

1. All records from the searched device that relate to violations of 21 U.S.C. §§ 841, and 846:

    a. identifying information about contacts and associates, such as contact lists, names, addresses, telephone numbers, and identifying information.

    b. text messages, emails, and other communications.

    c. All records reflecting or containing bank records, checks, credit card bills, account information, and other financial records.

    d. Videos, and photographs.

2. Evidence of user attribution showing who used or owned the searched device and the times of that use and ownership, including texts, emails, messages, as well as saved user names and passwords, cellular network provider/carrier information, user/owner account information, calendar events, contact lists, SMS (short message service) & MMS (Multimedia messaging service), call log details, e-mail accounts, internet web browsing activity, GPS (Global Positioning System) information, IP (Internet Protocol) Connections, user generated notes, digital photographs, video files, audio files, user generated dictionaries, wireless network connections, sync files, and voicemails.

3. Location data including GPS records, photographs, purchase records, emails and text messages that indicate Barreras-Capo's location at any particular time.

## AFFIDAVIT

I, Kevin M. Voit, being duly sworn, depose and say:

1. I am a United States Postal Inspector. I am currently assigned to the United States Postal Inspection Service, Philadelphia Division. I have been employed as a Postal Inspector since April, 2016. Prior to becoming a Postal Inspector, I was employed as a federal agent with the Department of Homeland Security for seven and one half years. I have a Bachelor of Science in Business Administration from Rider University in Lawrenceville, NJ.l.

2. I have been trained in various aspects of law enforcement, including the investigation of narcotics offenses. Through my education and experience and that of other agents assisting in this investigation, I have become familiar with the methods that individuals use to traffic narcotics through the U.S. Mail. As part of my duties as a United States Postal Inspector, I investigate the illegal use of the U.S. Mails and private carriers to transport controlled substances and drug trafficking instrumentalities, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846.

3. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B. The following 13 cellular telephones were seized at the time of the arrest of Edgar Barreras-Capo ("Barreras-Capo") and consent search of 4601 High Street Apartment D, Pennsauken, NJ:

| | |
|---|---|
| Item 1: | A Black LG-B470 IMEI:354104088864170 |
| Item 2: | Black Samsung Model SMB311V SKU: SMB311VZPP |
| Item 3: | Black AT&T Model:Z223 IMEI:868899026246302 |
| Item 4: | Black LG-B470 IMEI:014564008607912 |
| Item 5: | Blackberry Torch SKU#68001 |
| Item 6: | Black Samsung Model:SM327VL(GP) IMEI:355744097028389 |

1

| | |
|---|---|
| Item 7: | Black Samsung Model:SMS337TL(GP) IMEI:356448083065848 |
| Item 8: | Black ZTE Model:Z932L IMEI:990005151763589 |
| Item 9: | Black Motorola Model:XT1766 FCCID:IHDT56WC3 |
| Item 10: | Black ZTE Model:Z932L IMEI:990005151711539 |
| Item 11: | Black LG-B470 IMEI:359926086367649 |
| Item 12: | Black Samsung Model SM-J337P FCCID:A3LSMJ337P |
| Item 13: | Red iPhone T-Mobile Sim Card 8901260152719258092 |

4. The applied-for warrants would authorize the review and forensic examination of the thirteen cellular telephones for the purpose of identifying electronically stored information and data that is set forth in Attachment B.

5. Based on my training and experience, I am aware that traffickers of illegal controlled substances frequently use cellular telephones and other handheld electronic devices as part of their illegal drug trafficking activities. For example, drug traffickers:

a. Commonly maintain contact lists in cellular telephones that reflect names, addresses, and/or telephone numbers of their associates, including other members of their drug trafficking organization, customers and suppliers of the drug trafficking organization, and/or individuals involved in money laundering activities.

b. Frequently take or cause to be taken photographs and/or videos of themselves, their associates, their property, and their product using cellular telephones.

c. Frequently utilize cellular telephones to make telephone calls to and receive calls from customers and sources of supply and associates; cellular telephones are also frequently used to send and receive text messages and email messages related to the distribution of narcotics, including but not limited to, purchase requests, meeting locations, transaction times, and re-supply efforts and techniques. This information, including the names and phone numbers of customers, associates and sources of supply, is frequently maintained in the cellular telephones.

d. Utilize electronic equipment such as computers, memory storage, hand held electronic devices, and cellular phones to generate, transfer, count, record and/or store the information described above.

e. When using the shipping capabilities of the United States Postal Service or other delivery services in furtherance of drug trafficking, use cellular telephones to track and check the status of packages, or may enter a phone number into the USPS website to receive text message alerts about the status of a package.

6. On October 28, 2018, the Philadelphia Division of the U.S. Postal Inspection Service identified a suspect Priority Mail package bearing Priority Mail Parcel Number 9505511416278300181991 (hereinafter referred to as the "Subject Parcel"). The Subject Parcel was mailed from Puerto Rico in a USPS Priority Mail flat rate box on October 27, 2018, and had the following characteristics: Priority Mail No. 9505511416278300181991, measuring approximately 11.25" x 8.75" x 6" and bearing the return name/address "Yolanda Santiago Carrasquillo, Cond. Jardin Sereno apt. 803, Carolina PR. 00983" and the delivery name/address "Denise Santiago, 6626 Horrocks St., Philadelphia PA 19149."

7. On October 28, 2018, the Subject Parcel was exposed to a drug detection canine named "Chase." Chase was handled by Officer Michael Calchi Badge # 167 with the Millville Police Department. Officer Calchi advised Postal Inspectors that Chase alerted positive to the presence of illegal narcotics inside the Subject Parcel.

8. On October 29, 2018, the Honorable Linda K. Caracappa, Chief United States Magistrate Judge for the Eastern District of Pennsylvania, issued a federal search warrant to search the Subject Parcel. Upon authorization of the search warrant, Postal Inspectors opened the Subject Parcel and found it to contain a rectangular shaped plastic object wrapped in black tape surrounded by packing peanuts. Inside of the rectangular shaped object was another rectangular shaped object in a vacuum sealed bag. The rectangular shaped item inside of the vacuum sealed bag was wrapped in carbon paper, green plastic wrap, a dryer sheet, black rubber, and black plastic wrap. This rectangular shaped item was composed of a white substance (suspected cocaine) and weighed approximately one kilogram. The suspected cocaine was field tested and tested positive for the presence of cocaine. The estimated street value of one kilogram of cocaine is approximately $100,000 U.S. dollars.

9. On October 29, 2018, the Honorable Linda K. Caracappa, Chief U.S. Magistrate Judge for the Eastern District of Pennsylvania, issued a tracking warrant to allow law enforcement to monitor the location and contents of the Subject Parcel. U.S. Postal Inspectors repackaged the parcel with beepers and GPS tracking devices, and included a rectangular shaped item made to look like a kilogram of narcotics (hereinafter referred to as "the Kilogram"). The Kilogram contained a sham substance and a representative sample from the original cocaine. Law enforcement also placed theft detection powder on the outside of the Kilogram. This theft detection powder is invisible to the naked eye, but can be seen using an ultraviolet light. Law enforcement uses theft detection powder in order to determine whether a particular individual has touched an object.

10. On October 30, 2018, U.S. Postal Inspectors conducted a controlled delivery of the parcel to 6626 Horrocks Street, Philadelphia, PA 19149 (the "Delivery Location"). A U.S. Postal Inspector posing undercover as a letter carrier delivered the parcel to the Delivery Location" at approximately 11:40am. A Hispanic individual, (hereinafter referred to as "AS") instructed the UC to leave the Subject Parcel on the front steps of the Delivery Location. Moments later, a different Hispanic female opened the front door of the Delivery Location and took the Subject Parcel into the residence.

11. At approximately 11:45pam, a Hispanic individual, (hereinafter referred to as "AD"), arrived at the Delivery Location in a maroon Acura TL sedan bearing PA tag KNT6635 (the "Acura"). The Acura is registered to Lisa Carrasquillo, 4313 Palmetto Street, Philadelphia, PA 19124. At approximately 11:52am, AS exited the Delivery Location with a black bag and placed it into the trunk of the Acura.

12. After making several stops, at approximately 1:49pm, AD returned to 4313 Palmetto Street with the Kilogram still in the trunk of the Acura. AD parked the Acura in the driveway, opened the trunk, and removed the black bag that had been placed in the trunk by AS. AD walked towards a black Honda Odyssey minivan bearing NJ tag W11KKF and registered to Edgar Barreras-Capo, 4601 High Street Apt. D8, Pennsauken, NJ 08110 (the "Minivan"). AD passed the black bag to the front seat passenger of the "Minivan." The beeper and GPS device placed inside the Kilogram establish that it was transferred to the Minivan. The Minivan left the area traveling in the direction of the Ben Franklin Bridge.

13. At approximately 2:23 pm, the Minivan pulled into the parking area of Penn Garden Apartments in Pennsauken, NJ. An individual, later identified as Barreras-Capo, exited the driver side of the Minivan carrying the black bag. Barreras-Capo entered 4601 High Street Apt. D8, Pennsauken, NJ 08110 (the "Destination Location"). The beeper and GPS device placed inside the Kilogram establish that Barreras-Capo brought the Kilogram into the Destination Location.

14. At approximately 2:33 pm, Barreras-Capo exited the Destination Location carrying a white USPS Priority Mail parcel and entered the Minivan. Barreras-Capo left the area and deposited the white USPS Priority Mail box in a nearby dumpster and drove away. Law enforcement later recovered an empty Priority Mail box in that dumpster and determined that it had been the box that had contained the Kilogram. Located in the same dumpster were two other empty Priority Mail boxes that had been delivered to Philadelphia addresses the day before. The beeper and GPS device placed inside the Kilogram establish that it remained inside the Destination Location while Barreras-Capo disposed of the Priority Mail box.

15. At approximately 3:05 pm, Barreras-Capo parked the Minivan in the parking lot and returned to the Destination Location. At approximately 3:09 pm, the beeper device alerted law enforcement that the black rectangular shaped object had been opened. Law enforcement entered the Destination Location and detained Barreras-Capo.

16. At approximately 3:15 pm, Barreras-Capo's hands tested positive for the presence of theft detection powder.

17. At approximately 3:20 pm. Barreras-Capo was read his *Miranda* rights and agreed to speak with law enforcement without the presence of an attorney. Barreras-Capo admitted that he had put the contents of the Subject Parcel in the toilet of the Destination Location's bathroom. Barreras-Capo acknowledged that he knew that the Subject Parcel contained a kilogram of cocaine and advised that he had been waiting for a phone call from a friend in Puerto Rico to instruct him on where to deliver the kilogram of cocaine. Additionally, Barreras-Capo acknowledged that he had carried out similar transactions on prior occasions. He admitted that, just the day before, he had delivered a kilogram of cocaine to a barber shop. He added that on previous occasions he had been given a black rectangular shaped object and that he had sometimes received US Priority Mail parcels from which the labels identifying the recipient had already been removed. Barreras-Capo signed a Warning and Waiver of his *Miranda* rights, a consent form to search the Destination Location, and a consent form to search the three cell phones that he had had in his possession (which appear as items eleven through thirteen of paragraph 3 of this affidavit).

18. The search of the Destination Location yielded many items evidencing drug trafficking, including: two vacuum sealers, two digital scales, two bundles of cash banded and covered in plastic wrap totaling $16,000, a money counter, and the cellular telephones listed as

Items 1 through 10 in Paragraph 3 of this affidavit. In addition, agents discovered what appeared to packaging from earlier deliveries of packaged narcotics as well as materials to bundle cash.

19. That search also yielded evidence that Barreras-Capo resided at the Destination Location, including mail addressed to him at that address. In addition, driver's license and motor vehicle registration records establish his residence at that location.

20. At approximately 6:20pm, Barreras-Capo was reminded of his previously read *Miranda* rights, and he again agreed to speak without an attorney present. Barreras-Capo contradicted his previous statement and said that he did not know that the Subject Parcel contained cocaine until he opened it. He stated that this had been the first time that he had been given the authorization to open the black rectangular shaped object. Additionally, Barreras-Capo said that it had been the first time that he received a U.S. Priority Mail parcel and that he would typically receive a black rectangular shaped object. He added that the day prior to his arrest he had met an older Hispanic male near Hunting Park in Philadelphia, PA in the parking lot of an Auto Zone. He said that he had given the older Hispanic male a black rectangular shaped object.

21. Items recovered from a bag that Barreras-Capo possessed on the day of his arrest include the following three cellular telephones: a Black LG-B470 IMEI:359926086367649 (Item 11); a Black Samsung Model SM-J337P FCCID:A3LSMJ337P (Item 12); and a Red iPhone T-Mobile Sim Card 8901260152719258092 (Item 13).

22. On December 17, 2018, the Honorable Jacob P. Hart, U.S. Magistrate Judge for the Eastern District of Pennsylvania, issued a search warrant to allow law enforcement to search the thirteen telephones that are the subject of this application. Because of the holidays that search was not undertaken within the prescribed 14-day time limit.

7

23. Given that Barreras-Capo and others used the U.S. Postal Service to move suspected cocaine from Puerto Rico into the Eastern District of Pennsylvania on multiple occasions, and given that his residence contained tools of the drug trafficking trade – such as packaging materials, scales, and cash - there is probable cause to believe that Barreras-Capo has been actively engaged in drug trafficking and that he had possession of and/or access to the thirteen cell phones listed in paragraph 3 above. As discussed above, based on my training and experience, I know that drug traffickers use cellular telephones to carry on their drug trafficking activities. Indeed, in this case, not only did Barreras-Capo possess 13 cellular telephones, but he admitted that he had been awaiting a telephone call with directions for the further redistribution of the kilogram of cocaine. Thus, there is probable cause to believe that the thirteen cell phones listed in paragraph 3 will contain evidence of drug trafficking.

24. All of the thirteen cellular telephones listed in paragraph 3 of this affidavit are currently in storage at the United States Postal Inspection Services Office within the Eastern District of Pennsylvania. In my training and experience, I know that the thirteen cellular telephones have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when they first came into the possession of the United States Postal Inspection Service.

25. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for a warrant that would permit the examination of each of the thirteen cellular telephones listed in paragraph 3. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection and in rare cases may cause damage in order to extract the evidence described by the warrant.

26. Based on the aforementioned factual information, your affiant respectfully submits that there is probable cause to believe that within the items listed in Attachment A, there may be found evidence of violations of federal law, including but not limited to, drug trafficking and conspiracy to commit drug trafficking in violation of Title 21 USC §§ 841 and 846 and related offenses. As described in Attachment B, I seek authority to search for and seize:

1. All records from the searched device that relate to violations of 21 U.S.C. §§ 841, and 846:

    a. identifying information about contacts and associates, such as contact lists, names, addresses, telephone numbers, and identifying information. To the extent that persons are suppliers, customers, or other drug trafficking contacts, their identifying information is directly relevant to the investigation. Even if not, however, persons who know or have had contact with Barreras-Capo will provide a source of information about his movements, activities and other contacts.

    b. text messages, emails, and other communications. To the extent that such communications relate to sources or sales of drugs; types, amounts, or prices of drugs; or dates, places, and amounts of transactions, they are directly relevant to the investigation. Even if not, however, such communications will help to establish Barreras-Capo's activities, movements, and associates.

    c. All records reflecting or containing bank records, checks, credit card bills, account information, and other financial records. To the extent that such records constitute or evidence the receipt, expenditure, or concealment of the proceeds of drug distribution, then they are directly relevant to the investigation. Even if not, however, they will help to track Barreras-Capo's financial transactions.

    d. Videos, and photographs. If drug related they are directly relevant to the investigation. Otherwise, they will help to establish Barreras-Capo's friends, associates and other contacts, and well as his movements and activities.

2. Evidence of user attribution showing who used or owned the searched device and the times of that use and ownership, including texts, emails, messages, as well as saved user names and passwords, cellular network provider/carrier information, user/owner account information, calendar events, contact lists, SMS (short message service) & MMS (Multimedia messaging service), call log details, e-mail accounts, internet web

browsing activity, GPS (Global Positioning System) information, IP (Internet Protocol) Connections, user generated notes, digital photographs, video files, audio files, user generated dictionaries, wireless network connections, sync files, and voicemails.

3. Location data including GPS records, photographs, purchase records, emails and text messages that indicate Barreras-Capo's location at any particular time. To the extent that such location information details Barreras-Capo's location immediately before, during, or immediately after a drug transaction, it is directly relevant to the investigation. Otherwise, it is relevant to help establish Barreras-Capo's movements during the conspiracy period.

Kevin M. Voit
U.S. Postal Inspector

Sworn to before me this 4th day
of January, 2019.

HONORABLE THOMAS J. RUETER
United States Magistrate Judge

10